150

THE STATE OF DELAWARE, upon the relation of Anheuser-Busch, Inc., and N. K. S. DISTRIBUTORS, INCORPORATED, Plaintiffs, v. GEORGE J. SCHULZ, J. EDWARD TRUITT, T. BRINTON HOLLOWAY, CHARLES F. HUDSON and JOHN M. CONWAY, being and constituting the Delaware Alcoholic Beverage Control Commission, Defendants, and GENERAL DISTRIBUTORS, INC., Intervener.

(*September* 18, 1959.)

CHRISTIE, J., sitting.

*John P. Sinclair* for Relators.

*George Gray Thouron* for Defendants.

*William H. Foulk* for General Distributors, Inc., an Intervener.

Superior Court for New Castle County, No. 477, Civil Action, 1959.

CHRISTIE, J.:

Anheuser-Busch, Inc. (Anheuser-Busch) is a corporation of the State of Missouri engaged in the business of brewing Budweiser beer. It holds a license from the Delaware Alcoholic Beverage Control Commission (the Commission) which authorizes it to ship beer into Delaware to licensed importers which, in turn, may distribute the beer in Delaware.

General Distributors, Inc. (General) and N.K.S. Distributors, Incorporated (N.K.S.) are corporations of the State of Delaware licensed to import beer into the State and distribute it at wholesale.

The licenses issued by the Commission do not designate that a brewer must ship to a particular importer or that an importer may receive shipments only from a particular brewer, and the rules of the Commission, as they existed at the time this dispute arose, were silent on this subject.

For a number of years, General has acted as exclusive distributor of Anheuser-Busch products in Delaware, but no written agreement existed between Anheuser-Busch and General. Although General also handles other beers, the Budweiser account is an important part of its business.

Sometime in 1958, Anheuser-Busch became dissatisfied with General as a distributor. On January 10, 1959, Anheuser-Busch notified General informally that it intended to terminate the distributorship as of March 1, 1959, and to employ another distributor.

General complained to the Commission about the proposed change, and the Commission requested Anheuser-Busch to appear before it so that the Commission might be advised of the circumstances of the change in distributorship. On January 26, 1959, and again on February 18, 1959, Anheuser-Busch's testimony was taken and its arguments heard by the Commission.

On March 30, 1959, the Commission notified Anheuser-Busch and General that "Anheuser is presently the holder of a license issued by the Commission to sell beer to General" and "General is the holder of a wholesaler's license issued by the Commission which, *inter alia*, authorizes General to purchase beer from Anheuser". The Commission went on to point out that the licenses expired June 30, 1959, and that it did "not contemplate taking any further action in this dispute at the present time".

On April 24, 1959, Anheuser-Busch went forward with arrangements for the distribution of Budweiser by N.K.S. and N.K.S., as the newly designated distributor, filed a routine request with the Commission for approval of a price schedule identical to that previously used by General.

On April 27, the Commission notified N.K.S. that it would take no action to approve the price schedule. The withholding of such approval effectively blocked the distribution of Budweiser by N.K.S.

At the two hearings before the Commission, Anheuser-Busch maintained that its decision to change from one licensed distributor to another was a business decision not subject to review by the Commission. On account of this position, Anheuser-Busch did not fully explain its reasons for the change, although it summarized them.

The Commission made it clear that it regarded such change as subject to its review and approval.

On April 30, 1959, this suit was filed in the name of the State upon the relation of Anheuser-Busch and N.K.S. seeking a writ of mandamus directing defendants to approve the price list and recognize the change in distributorship. General was permitted to intervene.

At a hearing before this Court, it appeared that the Commission did not regard the announcement dated March 30, 1959, as a final disposition of the matter. I, therefore, suggested that it would be desirable for the Commission to resolve the matter one way or the other, and the Commission agreed to consider the matter further.

On June 24, 1959, Anheuser-Busch again appeared before the Commission and without waiving its position that the Commission lacked authority in the matter, Anheuser-Busch presented more evidence as to its reasons for desiring to change

distributors.[1] The evidence presented by Anheuser-Busch in that hearing is before the Court. It dealt largely with what Anheuser-Busch claimed to be General's poor sales record and General's lack of cooperation with Budweiser sales programs. The testimony presented by General was largely confined to a rebuttal of Anheuser-Busch's testimony.

After the hearing, the Commission announced that "because Anheuser-Busch has shown insufficient reasons for terminating the distributorship", the Commission refused permission to cancel the existing distributorship held by General. The Commission further indicated that it would consider Anheuser-Busch's desire to make N.K.S. a distributor provided the procedures required in Rule 46 are followed.

Rule 46 is a new rule of the Commission. It became effective May 6, 1959, after this dispute arose. It provides among other things that no transfer or cancellation of a distributorship shall be made without Commission approval.

While the case has been pending, on July 1, 1959 the licenses held by the parties hereto expired and new licenses were issued to all the parties similar to the old ones.

At the hearing before this Court, Anheuser-Busch established that in the past when other brewers had changed their distributors they generally used an informal procedure similar to that here used by Anheuser-Busch. The Commission showed, however, that this is the only case in which a complaint was made by the distributor whose services were about to be dispensed with. There was some evidence that the agents of the Commission had in the past assisted informally in the ironing out of minor difficulties which accompanied a change in distributors.

---

[1]The Commission placed the burden of proving the desirability of the change on Anheuser-Busch.

There is no other evidence to indicate why the Commission undertook to review the wisdom of this change in distributors when it had theretofore been comparatively inactive in connection with other similar changes. The record also fails to show whether or not the Commission's decision was based on a finding that the change would be contrary to law or would be detrimental to the public interest.

This is a decision on the merits of the application for a writ of mandamus.

■ If Anheuser-Busch had a right to act as it did and if such act was effective, then the change was completed before Rule 46 was adopted and the rule could not prevent that change. I attach no special significance to the new rule or to the expiration of the licenses on July 1, 1959. The requirements of Rule 46 are not retroactive and the validity of Rule 46 is not before the Court. Since new general licenses have been issued to all parties, a decision as to the status of the distributorships prior to effective date of the rule would continue to define the rights and duties of the parties even if any subsequent changes are subject to Rule 46.

Among the pertinent statutes are the following (emphasis added by the Court):
"The duties and powers of the Commission shall be to—

"(1) Adopt and promulgate *rules and regulations* not inconsistent with the provisions of this title or of any other law of the State of Delaware, and all such rules and regulations shall have the force and effect of law.

"(2) Establish by *rules and regulations* an effective control of the business of manufacture, sale, dispensation, distribution and importation of alcoholic liquors within and into the State of Delaware, including the time, place and manner in which alcoholic liquors shall be sold and dispensed, not inconsistent with the provisions of this title. * * *

"(5) Control the manufacture, possession, sale and delivery of alcoholic liquors in accordance with the provisions of this title; and control the purchase, possession, transportation and sale of alcoholic liquors by those licensed to manufacture or to sell." 4 *Del. C.* § 304(1), (2) and (5).

"No sale and delivery of alcoholic liquor shall be made in this State unless made by the Commission, a manufacturer or other person who holds a license of the Commission to sell and deliver alcoholic liquor and unless the sale and delivery is made to a person who is authoried to receive alcoholic liquor under chapter 5 of this title. No common carrier shall be held responsible for the delivery of alcoholic liquor forbidden by this section." 4 *Del. C.* § 701.

"No manufacturer, or importer shall sell, ship, transport or deliver wine or beer within this State to any person other than to the Commission, unless, in accordance *with the published regulations* of the Commission and unless a statement of the date, amount and description of the transaction be mailed to the Commission." 4 *Del. C.* § 708.

"The Commission *may make a regulation* authorizing a manufacturer or importer to sell, transport or deliver wine or beer within this State to any person or class of persons authorized under this title to receive wine or beer." 4 *Del. C.* § 709.

"If alcoholic liquor is to be shipped by a distillery or manufacturer to a place within this State, the distillery or manufacturer may sell it only to the Commission *or under the published rules* of the Commission and the distillery or manufacturer shall in every case comply with every other applicable provision of this title." 4 *Del. C.* § 727(b).

Alcoholic liquor is defined as including beer. 4 *Del. C.* § 101. Chapter 5 referred to in 4 *Delaware Code* § 701 quoted above is the statute on licensing, under which both General and N. K. S. hold licenses.

It is to be noted that rules or regulations are mentioned in five of the paragraphs quoted above, and one of the other paragraphs (4 *Del. C.* § 304(5)) appears in a Code section in which the rules and regulations had already been twice mentioned.

■ The real problem before the Court is whether the Commission had authority in the absence of a rule to block a change from one licensed distributor to another by refusing to approve an otherwise acceptable price list. Is the statute, standing alone, sufficient authority to permit the Commission to regulate which licensed distributor may distribute a particular brand?

The Commission takes the position that it has clear statutory power to refuse to permit the change in distributors and that no rule on the subject was necessary. The Commission's argument is based largely on the very broad powers to regulate all phases of the sale and distribution of beer which the statute plainly vests in the Commission. The Commission, however, goes on to point out that sales for resale may be made only to the Commission or to "a person who is authorized to receive alcoholic liquor under chapter 5 of this title" (4 *Delaware Code* § 701) and then only "in accordance with the published regulations of the Commission" (4 *Delaware Code* § 708).

The Commission argues that since the Commission could handle all distribution itself and thus exclude all distributors, it surely has the much less sweeping power to disapprove any changes a brewer may wish to make in its distributors.

Furthermore, since the statute provides that sales to distributors can be made only in accordance with the regulations and since the sales to N. K. S. are not specifically provided for in any regulation, the Commission argues that any such sales would be illegal.

I cannot agree with this interpretation of the statutes. The Commission has not seen fit to act as distributor. Instead it has

issued licenses to others. While such licenses create no vested interest, the holders thereof are entitled to whatever protection the statute affords them. And in this case, the statute contemplates published rules or regulations. The statute specifies that sales and distribution must be in accordance with the regulations. This provision is effective only insofar as applicable regulations actually exist, although presumably no sales could take place in the total absence of rules and regulations.

Many published regulations of the Commission do exist which apply to the sale and distribution of beer. When there was no regulation as to the selection of the licensed importer by a licensed brewer or the change from one importer to another, it can hardly be said that the use of one licensed importer instead of another is not in accordance with published regulations.

It is further argued that control of distribution of beer would pass from the Commission to the brewer if the Court adopts the position taken by Anheuser-Busch. All phases of beer distribution on which the Commission, acting in compliance with the statute, has made a valid rule are under the direct control of the Commission from the effective date of any applicable rule. It is difficult to see how the Commission could be given more complete control.

It is also suggested that the pertinent parts of Rule 46 merely codify what was the existing and well established practice of the Commission in respect to changes in distributors. The record does not support this contention.

General takes a position somewhat similar to that taken by the Commission. General says that N. K. S. has the burden of showing that it is authorized by the Commission to act as distributor. It insists that "barring specific regulations, sellers of beer cannot sell to anyone but the Commission and buyers of beer cannot buy from anyone but the Commission" and "there

may be, at the mere inaction of the Commission, no importation of beer * * * unless directly to the Commission."

This argument seems to ignore the fact that N. K. S. does hold a general license from the Commission authorizing it to act as distributor and that no action has been taken which is contrary to any applicable rule.

Furthermore, if General's argument applies to this case and if it is carried to its logical extreme, all sales of beer to licensed distributors have been illegal since no such sales have been authorized by specific rule or regulation.

There is an attempt to avoid this absurd result by a suggestion that the Commission's acquiescence in General's activities (and presumably the activities of all the other distributors over the years) may well be taken as a rule or regulation. This suggestion leaves out of consideration the fact that the Commission apparently acquiesced in any changes in distributorships until this change was proposed. If acquienscence creates a rule it could be argued that Anheuser-Busch followed the rule when it changed its distributor.

If a specific rule is required to authorize N. K. S. to act as distributor of Budweiser, obviously a specific rule is required to authorize any distributor to carry any brand. If long acquiescence to a given practice amounts to a rule of the Commission, we must reconcile a long standing rule that General is the distributor of Budweiser with an equally long standing rule that brewers may select their own distributors from among those licensed under chapter 5 of the statute.

I think that a careful reading of the statutes indicates that the General Assembly intended that most of the jurisdiction conferred on the Commission, and not spelled out in detail in the statute, would be exercised only pursuant to general rules or regulations promulgated by the Commission.

This interpretation finds support in the dicta of the Delaware Supreme Court in the case of *Demarie v. Delaware Alcoholic Beverage Control Commission*, 1 *Storey* (51 *Del.*) 206, 143 *A.* 2d 119, 122:

"* * * It is generally an accepted doctrine that the manufacture and sale of intoxicating liquors is not an inherent or constitutional right. It is merely a privilege which the State may grant, or which it may take away or which it may regulate. The manner and extent of the regulation rests within the sound discretion of the granting authority. *Under proper rules and regulations* it may even grant such authority to some and deny it to others * * *." (Emphasis added.)

The importance of rules is also touched upon in the case of *Grow v. Delaware Liquor Commission*, 1950, 6 *Terry* 564, 77 *A.* 2d 72.

██ The statutory requirement that no sales be made except pursuant to the rules and regulations of the Commission is not to be transposed into a requirement that rules and regulations governing sales must actually go so far as to specify which distributor may handle a particular brand of beer. This Court is not called upon to decide whether the Commission's statutory powers are broad enough to permit the Commission to promulgate a rule which in turn requires that each distributorship, as to each brand of beer, be approved by specific resolution of the Commission. The Commission had no such rule and the statute, in requiring that sales and distribution be as provided in the rules, does not go that far nor does it require the Commission to go that far. In any case, the power to promulgate rules is not the equivalent to the power to regulate without rules.

██ Thus, I find that any authority the Commission may have to regulate a change by a licensed brewer from one licensed distributor to another is effective only to the extent it is implemented by a valid rule or regulation.

■ Obviously, no rule need implement the Commission's powers where such powers are specifically enumerated in the statute and no reference to rules is made. But where, as is the case here, the grant of the power is coupled with a requirement that the power be exercised through promulgation of rules and regulations, the Commission is bound by the statutory requirement and can act only under an applicable rule or regulation.

■ I find that the rules of the Commission as they existed when this dispute arose regulated the distribution of beer. Any arrangements for beer distribution made in conformity with the rules, as such rules existed at the time, would be pursuant to the rules within the meaning of the statute. However, since no rule existed when this dispute arose which regulated a change from one licensed distributor to another, the Commission was without jurisdiction to block the change.

I have made no attempt to review the decision of the Commission on the merits of the case, since I find the Commission to have had no jurisdiction in the matter.

An order will issue requiring the Commission to act upon the price schedule filed by N. K. S. on its own merits without regard to the provisions of any rule, which was enacted since this dispute arose, and without attempting to use the price schedule as a method of blocking a change from one licensed distributor to another.